IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ERIC KOONCE,

        Plaintiff,

v.                                            Civil Action No. 3:21cv660

LLYOD J. AUSTIN, III, SECRETARY OF
THE DEPARTMENT OF DEFENSE,
        Defendant.

## OPINION

In 2012, the plaintiff Eric Koonce filed an Equal Employment Opportunity Commission ("EEOC") complaint against his employer, the Department of Defense.  Later, in 2016, the plaintiff filed another EEOC complaint claiming that he faced retaliation from his employer for filing the 2012 EEOC complaint.  The plaintiff contends that the defendant retaliated against him in the years following the first EEOC complaint by: (1) denying the plaintiff the opportunity to cross-train in other departments; (2) placing an e-mail in the plaintiff's personnel file that could potentially negatively affect future employment opportunities; and (3) mishandling a message from the Red Cross that delayed the plaintiff from seeing his dying grandmother before she passed.

The plaintiff now brings this action under the Title VII of the Civil Rights Act of 1964 ("Title VII").  The defendant moves to dismiss all three of the plaintiff's retaliation claims for failure to state a claim upon which relief can be granted because the plaintiff has not pleaded a causal connection between the protected activity and the allegedly retaliatory employment actions. The Court agrees and finds that the plaintiff's claims against the defendant fail because he cannot demonstrate causation.

## I. <u>FACTS ALLEGED IN THE COMPLAINT</u>

The plaintiff worked as a Material Handler (Forklift Operator) Leader for the Defense Commissary Agency (an agency within the Department of Defense) at Gemersheim Central Distribution Center in Gemersheim, Germany. (ECF No. 3-1, at 2; ECF No. 3, at 7 ¶ 1.)[1]   After the plaintiff's mother suffered an illness in 2012, the plaintiff's family notified the Red Cross of the emergency, who then informed the plaintiff's managers. (ECF No. 3, at 7 ¶ 3.)  Notification from the Red Cross entitled the plaintiff to take leave to care for his mother. (*Id.*)  Lack of timely notice by the defendant, however, prevented the plaintiff from taking leave as soon as he could have. (*Id.*)  Later in 2012, the plaintiff filed an EEOC claim against the defendant. (*Id.* at 9 ¶ 17.)

After the 2012 EEOC claim, the plaintiff noticed a pattern in the defendant's refusal to cross-train him. (*Id.* at 7 ¶ 6.)  In 2015, the plaintiff submitted his resume to Karen Sandvoss, the manager of Inventory Management, to apply to attend a training program. (*Id.* at 8 ¶ 15.)  He had not yet received any additional training as a work leader, despite having the position for ten years. (*Id.* at 7, 9 ¶¶ 6, 16.)  Sandvoss instead chose other work leaders for the training. (*Id.* at 7 ¶ 6.)  The plaintiff asked Panissee Stewart, the Supervisory Distribution Facility Specialist, why he had not been chosen for the training. (*Id.* at 8 ¶ 15.)  Stewart indicated that the plaintiff was not chosen because of his resume. (*Id.*)  Stewart then asked to see the plaintiff's resume and later commented that Sandvoss must not have looked at it. (*Id.*)

In February 2016, the plaintiff asked to cross-train in multiple departments, but his managers denied the request. (*Id.* at 7, 9 ¶¶ 6, 17.)  In denying the request, managers relayed to the plaintiff that short staffing issues prevented the plaintiff from receiving cross-training. (*Id.* at

---

[1] The Court employs the pagination assigned by CM/ECF docketing system.

7 ¶ 6.) Other employees, however, like Oliver Hoess and Jamal Alston,[2] did cross-train in multiple departments. (*See id.* at 8 ¶ 13.) Stewart later indicated that Hoess and Alston received supervisory positions in February 2016 because of the training that they received. (*Id.* at 8–9 ¶¶ 12, 16.)

Besides being denied training opportunities, the plaintiff noticed other impediments to his career due to the defendant's actions. Concerning future employment prospects, the plaintiff received a tentative job offer within the Department of Defense in February 2013. (*See id.* at ¶ 10.) A Human Resources Specialist then withdrew the tentative offer of employment because the plaintiff lacked a driver's license, which the position required. (*See id.* at 8 ¶ 10; ECF No. 9-1, at 1–2.)[3] The Human Resources Specialist copied Dennis Heggins, a store manager, on the original withdrawal e-mail to the plaintiff. (ECF No. 9-1, at 2–3.) Heggins then forwarded the e-mail to others. (*Id.* at 2.) Heggins admitted forwarding the e-mail in order to inform higher management that the plaintiff did not have a license, which "Heggins believed could in fact block [the plaintiff] from getting offers." (ECF No. 3, at 8 ¶¶ 10–11.)

Liliane Flagler, a Supervisory Operation Support Specialist who received Heggins's forwarded e-mail, maintains personnel files. (*Id.* ¶ 8–9.) She claimed that she did not know about the plaintiff's 2012 EEOC complaint. (*Id.* ¶ 8.) "According to Flagler, after the incident in 2012, she printed out the email and placed it in [the plaintiff's] local folder in February 2013 as a paper trail to remind herself what had occurred." (*Id.* ¶ 9.) The plaintiff did not know that the e-mail

---

[2] The plaintiff describes Hoess and Alston as his "listed comparators." (*Id.* at 8 ¶ 12.) The plaintiff believes that neither individual had filed a previous EEOC complaint. (*See id.* ¶ 13.)

[3] The Court can consider documents outside of the complaint, as long as "the document [is] integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Here, the 2013 e-mail is integral to the complaint because the plaintiff references the contents in his complaint. (*See* ECF No. 3, at 8 ¶ 10.) He also has not disputed the authenticity of the 2013 e-mail.

existed in his file until February 2016. (*Id.* at 7 ¶ 7.) The plaintiff "has not had any offers of reassignments since the 2013 offer" because the 2013 e-mail in his file has had the effect of blocking other offers. (*Id.* at 8 ¶ 11.)

In April 2016, the plaintiff's grandmother suffered a brain injury and became gravely ill. (*Id.* at 7, 9 ¶¶ 4, 18.) The plaintiff's family sent a Red Cross message explaining the situation, which Michael Pettitt, the Distribution Facility Manager, received while at home on April 25, 2016, at 6:00 P.M. (*Id.* ¶¶ 4, 19.) Pettitt claims that he gave the message to the plaintiff the next day at 7:30 A.M. (*Id.* at 9 ¶ 19.) The plaintiff did not see Pettitt on April 26, though, because Pettitt went to an air base that day. (*Id.* ¶¶ 19–20.) Instead, Stewart told the plaintiff about the Red Cross message at 9:30 A.M. on April 26. (*Id.* ¶ 20.) Stewart then told the plaintiff that Stewart did not have time to take care of the "issue" because he needed to leave to get his car inspected. (*Id.*)

Two days later, Stewart signed the plaintiff's initial leave form to allow the plaintiff to return to the U.S. (*Id.* ¶¶ 21, 23.) Stewart indicated that Pettitt needed to approve the leave request as well. (*Id.* ¶ 21.) Pettitt later claimed that the plaintiff was given a letter allowing him to take a military plane back to the United States. (*Id.*) The plaintiff did not receive that letter and, even if he had, still needed Pettitt to approve the leave form. (*Id.*) On April 29, four days after Pettitt received the Red Cross message, Stewart signed the plaintiff's final leave request. (*Id.* ¶ 23.) Two hours before the plaintiff departed for the airport on May 1, the plaintiff found out that his grandmother had passed away. (*Id.*)

Comparing the 2012 delay with his mother and the 2016 incident with his grandmother, the plaintiff states that "it is cruel to do this to someone's family even if you are upset that they filed an EEO complaint." (*Id.*) The plaintiff knows other employees who have not previously

4

filed EEOC complaints who obtained their leave requests on the day their Red Cross messages arrived, or on the day after. (*Id.* at 10 ¶ 24.)

Following all of these incidents, the plaintiff filed an EEOC complaint and received a right to sue letter. (*See id.* at 5; *see also* ECF No. 3-1, at 3.) The plaintiff now brings this action before the Court seeking compensatory damages. (ECF No. 3, at 6.)

## II. <u>STANDARD OF REVIEW</u>

The defendant moves to dismiss the plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, claiming that the plaintiff has not met the elements of the cause of action. (ECF No. 9, at 1–2.) In deciding the sufficiency of the claim, the Court does not consider disputes involving the facts or merits of the claim. *See Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering the motion, the Court must accept all allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a "document filed *pro se* is 'to be liberally construed'" and "'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## III. <u>ANALYSIS</u>

The plaintiff brings this action for retaliation discrimination in employment under Title VII. *See* 42 U.S.C. §§ 2000e–2000e-17. Title VII prohibits employers from discriminating against

an employee due to that employee's "race, color, religion, sex, or national origin." *See id.* § 2000e-16. The statute additionally forbids an employer from retaliating against an employee who has previously opposed employer action that violates Title VII.[4] *See id.* § 2000e-3(a).

At the motion to dismiss stage, a plaintiff claiming Title VII harms does not need to demonstrate a *prima facie* case under the *McDonnell Douglas* burden-shifting framework "to withstand a motion to dismiss." *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)); *see also Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (noting that the plaintiff did not need to "plead facts that constitute a prima facie case" for the plaintiff's retaliation claim to defeat a motion to dismiss). The plaintiff still must allege facts, however, that establish "'a right to relief above the speculative level' that an employee suffered an adverse employment action because of the employee's membership in a protected class." *Carter v. Va. Dep't of Game and Inland Fisheries*, No. 3:16cv661, 2017 WL 4413192, at *11 (E.D. Va. Sept. 29, 2017) (quoting *Coleman*, 626 F.3d at 190)). The elements of a retaliation claim require the plaintiff to show that: (1) the plaintiff "engaged in a protected activity"; (2) the employer "took an adverse action against [him]"; and (3) "a causal relationship existed between the employee's protected activity and the employer's adverse action. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (alteration in original) (quoting *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015)).

---

[4] While an express cause of action for retaliation is available for non-federal employees in §2000e-3(a), Title VII does not specifically indicate the same for federal employees. *See* 42 U.S.C. § 2000e-16(a). The Fourth Circuit, however, has "little doubt that Congress 'incorporated the protections against retaliation' afforded to private employees by 2000e-3(a)" into the provision regarding discrimination against federal employees. *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011). The defendant does not dispute that a Title VII retaliation claim applies against federal government employers. (ECF No. 9, at 10.)

Here, the plaintiff claims that his employer retaliated against him for filing a prior EEOC complaint. (ECF No. 3, at 4–5.) As outlined below, the plaintiff has not alleged facts sufficient to meet the causation element of his retaliation claim and, consequently, the Court finds that he has failed to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

### *A. The First Element: the Plaintiff Engaged in a Protected Activity*

The first element of a Title VII retaliation claim requires that the plaintiff must have previously engaged in a protected activity. *See Roberts*, 998 F.3d at 122. A plaintiff who makes a "complaint[] of discrimination based upon 'race, color, religion, sex or national origin'" has engaged in a Title VII protected activity. *See id.* (citing *Landino v. Sapp*, 520 F. App'x 195, 198 (4th Cir. 2013)); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 347 (2013) (indicating that an employee's "submission of or support for a complaint that alleges employment discrimination" is a type of protected employee conduct). Here, the plaintiff engaged in a protected activity when he filed his first EEOC complaint in 2012. *See Nassar*, 570 U.S. at 347; *Roberts*, 998 F.3d at 122.

### *B. The Second Element: the Employer Took Adverse Action Against the Plaintiff*

#### *1. Legal Standard*

The second element of a Title VII retaliation claim requires that the plaintiff show that the employer "took an adverse action against [him]." *See Roberts*, 998 F.3d at 122 (alteration in original) (quoting *Foster*, 787 F.3d at 250). Regarding the meaning of an "adverse action," Title VII's retaliation provision "does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace." *Burlington N. and Santa Fe Ry. Co. v. White*,

7

548 U.S. 53, 57 (2006). Further, the provision "covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant." *Id.*[5]

An action is "materially adverse" if "the employer's actions [are] harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* Material adversity is important because "petty slights or minor annoyances" from employers that an employee might face are just part of the usual employee experience. *Id.* at 68. To rise to the level of retaliation, then, the employer must have engaged in an action that would likely "'deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)). The "materially adverse" standard is measured by an objective standard based on the "reasonable employee." *Id.* The objective standard does take into account, however, that "any given act of retaliation will often depend upon the particular circumstances." *Id.* at 69.

---

[5] Unlike the private employer discrimination and retaliation provisions, Title VII's federal employer provision states that "[a]ll *personnel actions* affecting [certain federal] employees . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-16(a) (emphasis added). In the Fourth Circuit, the question of whether the *Burlington Northern* "materially adverse" standard or a distinct "personnel actions" standard applies to federal employees' retaliation claims remains outstanding. *See Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008) (declining to settle the question because the plaintiff did not establish their retaliation claim when they failed to show the causation element).

In an unpublished opinion, however, the Fourth Circuit found that the *Burlington Northern* "materially adverse" standard applied to a federal employee's retaliation claim under § 2000e-16(a), explaining that "it would be illogical for Congress to impose an additional element of proof on federal employees when it has provided identical remedies for federal and private employees who allege retaliation." *See Caldwell v. Johnson*, 289 F. App'x 579, 591, 592 (4th Cir. 2008); *see also Pueschel v. Peters*, 340 F. App'x 858, 861 (4th Cir. 2009) (applying the *Burlington Northern* standard in a Title VII retaliation action involving a federal employer); *Wells v. Gates*, 336 F. App'x 378, 383 (4th Cir. 2009) (same). Ultimately, because the plaintiff fails to state a claim upon which relief can be granted regarding the causation element of his retaliation claim, this Court can assume without deciding that the broader *Burlington Northern* standard applies in this case.

2. *Analysis*

Using the "materially adverse" standard here, the defendant's conduct against the plaintiff must be such that a reasonable employee could be dissuaded from engaging in filing or supporting a complaint. *See Burlington N.*, 548 U.S. at 57. Concerning the plaintiff's claim about his employer's refusal to cross-train him, the plaintiff states that he had been a work leader for ten years, and during those ten years "[he] received no training," a pattern he had "observed and experienced since filing [his] earlier complaints." (ECF No. 3, at 7 ¶ 6.) He also states that whenever he asked about being cross-trained for other departments, his request "was denied, allegedly because a section did not have enough people or because people were on leave or sick." (*Id.*) Conversely, the plaintiff's "non-EEO active comparators . . . were allowed to cross-train in multiple sections." (*Id.* at 8 ¶ 13.) Those employees with cross-training additionally received promotions because of their training. (*Id.* at 9 ¶ 16.) Denial of cross-training requests that prevented the plaintiff from professional advancement, especially if in a pattern starting from the original EEOC complaint, could be a "materially adverse" action that would dissuade an employee from engaging in a protected activity. *See Burlington N.*, 548 U.S. at 69 (giving an example that an employer who "exclud[es] an employee from a weekly training lunch that contributes significantly to the employee's professional advancement" could likely deter an employee from making a complaint and therefore be a "materially adverse" action). Thus, the Court finds that the plaintiff's managers' denial of his cross-training requests is a "materially adverse" action.

Placing an e-mail in a personnel file, on the other hand, does not rise to the level of a "materially adverse" action unless the action has "collateral consequences." *See Michael v. Va. Commonwealth Univ.*, No. 3:18cv125, 2018 WL 3631888, at *3 (E.D. Va. Jul. 31, 2018) (stating that "poor performance evaluations, negative comments, and reprimands without collateral

9

consequences do not constitute adverse action" in a Title VII retaliation action). Here, the 2013 e-mail detailed a communication from Human Resources to the plaintiff withdrawing the plaintiff's potential job offer due to his lack of a driver's license. (*See* ECF No. 9-1, at 2–3.) Flagler placed the e-mail in the plaintiff's personnel file to "remind herself what had occurred." (ECF No. 3, at 8 ¶ 9.) While the presence of the negative e-mail itself may not have constituted a "materially adverse" action, the plaintiff alleges that Flagler's placement of the 2013 e-mail in his personnel file had collateral consequences. (*Id.* ¶¶ 10, 11.) The plaintiff says that the existence of the e-mail in his file prevented him from receiving other offers of reassignment. (*Id.*) Thus, it prevented the plaintiff from receiving future job opportunities and constitutes a "materially adverse" action that could dissuade a reasonable employee from engaging in filing a complaint against their employer. *See Burlington N.*, 548 U.S. at 69.

Lastly, regarding the Red Cross message about the plaintiff's sick grandmother, the plaintiff alleges that his managers delayed in signing off on his leave request. (ECF No. 3, at 7 ¶ 4.) Thus, the plaintiff did not arrive home in time to say goodbye to his grandmother before she passed away. (*Id.*) For an employee who works for the military, delayed approved leave can constitute a "materially adverse" action that would dissuade a reasonable employee from participating in a protected activity, particularly when the employee cannot return home before a family member passes away because of the delayed leave. *See Burlington N.*, 548 U.S. at 69. This is more than a "petty slight[] or minor annoyance[]" that employees face day-to-day. *See id.* at 68. Thus, the Court finds that the plaintiff's claims regarding the defendant's conduct all allege "materially adverse" actions that meet the second element of a Title VII retaliation claim.

### C. The Third Element: A Causal Relationship Must Exist Between the Protected Activity and the Adverse Activity

A retaliation claim's third element requires the plaintiff to show a causal relationship existed between the employee's protected activity (here, filing an EEOC complaint) and the employer's adverse action. *See Roberts*, 998 F.3d at 122.  The plaintiff does not have to prove but-for causation; the burden for *prima facie* causation is "'less onerous.'"  *Foster*, 787 F.3d at 251 (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)).  A plaintiff can establish a causal connection between their protected activity and the employer's adverse action in two ways: (1) through establishing "the existence of facts that 'suggest[] that the adverse action occurred because of the protected activity,'" or (2) through alleging that the adverse act "bears sufficient temporal proximity to the protected activity."  *Roberts*, 998 F.3d at 123 (alteration in original) (quoting *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x. 781, 784 (4th Cir. 2021)).

Additionally, the Fourth Circuit held that "the causation prong of a *prima facie* case of retaliation requires that a plaintiff demonstrate that the decisionmaker imposing the adverse action have actual knowledge of the protected activity."  *Id.* at 125.  Proving actual knowledge "requires 'more evidence than mere curious timing coupled with speculative theories.'"  *Id.* at 126 (quoting *EEOC v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017)).  Although the plaintiff here does not need to establish a *prima facie* case at the motion to dismiss stage, the plaintiff still must allege facts that establish "'a right to relief above the speculative level' that an employee suffered an adverse employment action because of the employee's membership in a protected class."  *Carter*, 2017 WL 4413192, at *11 (quoting *Coleman*, 626 F.3d at 190 (quoting *Twombly*, 550 U.S. at 555 (2007))).

The plaintiff here, then, needs to show facts demonstrating that the supervisors in question both had actual knowledge of the plaintiff's protected activity and that they committed the adverse action because of or in temporal proximity to the protected activity.  *See Roberts*, 998 F.3d at 123.

The Court finds that the plaintiff has not alleged facts to support the causation element of a Title VII retaliation because he fails to plausibly allege that any decisionmaker had actual knowledge of his protected activity, that the adverse actions occurred because of his protected activity, or that the adverse actions bore temporal proximity to the protected activity.

### 1. *Actual Knowledge*

Essential to either path of establishing causation (whether through establishing facts that suggest the adverse action happened because of the protected activity or through temporal proximity) is that the "relevant decisionmaker" who committed the adverse action must have had actual knowledge of the plaintiff's protected activity. *See Roberts*, 998 F.3d at 124.[6] If the plaintiff cannot "demonstrate that the decisionmaker imposing the adverse action" had actual knowledge of the protected activity, the plaintiff "cannot establish the causation element of a *prima facie* case." *Id.* at 125–26.

For his claim regarding lack of professional development, the plaintiff says that he was denied cross-training, "a pattern which [he] had observed and experienced since filing [his] earlier complaints," but never mentions who denied the cross-training. (ECF No. 3, at 7 ¶ 6.) Because the plaintiff does not indicate who denied his requests to cross-train, and additionally does not specifically allege that anyone who would have denied his requests had actual knowledge of his 2012 EEOC activity, the plaintiff has not demonstrated that the people who denied his cross-training requests had actual knowledge of the 2012 EEOC complaint. *See Roberts*, 998 F.3d at 124. The plaintiff additionally does not allege that Sandvoss (who did not select the plaintiff for

---

[6] *See also Carter*, 2017 WL 4413192, at *18 (explaining that the decision maker's knowledge of the protected activity is essential to a Title VII retaliation claim); *Allen v. Rumsfeld*, 273 F. Supp. 2d 695, 708 (D. Md. 2003) (stating that a plaintiff who only relies on temporal proximity to prove causation must still prove that the employer in question had actual knowledge).

a different training opportunity) knew that the plaintiff had filed a 2012 EEOC complaint. (*See* ECF No. 3, at 8 ¶ 15.) Because a plaintiff cannot meet retaliation's causation element when "the relevant decisionmaker was unaware that the plaintiff had engaged in a protected activity," the plaintiff here has not plausibly pleaded that the people who denied his cross-training had actual knowledge of his EEOC claim. *Roberts*, 998 F.3d at 126 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 655 (4th Cir. 1998)).

For the plaintiff's claim regarding Flagler's 2013 e-mail placement in his personnel file, the plaintiff says that Flagler "stated at the time of the alleged discriminatory act she was not aware of my prior EEO activity, however, part of her job is to maintain local personnel folders." (*See* ECF No. 3, at 8 ¶ 8.) While the plaintiff surmises that Flagler should have known about the prior EEOC complaint due to her position managing personnel folders, his theory is only speculation and not a fact that demonstrates Flagler had actual knowledge of his EEOC complaint. *See Roberts*, 998 F.3d at 124–26.[7] Thus, the plaintiff has not alleged facts that "demonstrate that the decisionmaker imposing the adverse action" had actual knowledge of the protected activity. *Roberts*, 998 F.3d at 124–25.

When talking about the delay to see his grandmother, the plaintiff states in conclusory terms that his managers knew about his prior EEOC complaint. He writes, "[M]y management chain had been made aware of how harmful the earlier experience had been for me and my

---

[7] The plaintiff goes on to say that "[a]ccording to Flagler, after the incident in 2012, she printed out the email and placed it in [the plaintiff's] local folder in February 2013 as a paper trail to remind herself what had occurred." (ECF No. 3, at 8 ¶ 9.) The plaintiff's complaint does not explain whether the "incident in 2012" refers to his 2012 EEOC complaint, his mother's illness, or some other event. Flagler said, however, that she did not know about the 2012 EEOC complaint when she placed the 2013 e-mail in his file. (*See id.* ¶¶ 8–9.) The Court thus finds that the "incident in 2012" does not refer to the plaintiff's 2012 EEOC complaint.

family."[8] (ECF No. 3, at 7 ¶ 5.) He then states, "It is cruel to do this to someone's family even if you are upset that they filed an EEO complaint." (*Id.*)

The Fourth Circuit, however, has "consistently required *proof* of a decisionmaker's knowledge of protected activity to support a Title VII retaliation claim." *See Roberts*, 998 F.3d at 124 (emphasis added). Here, the plaintiff does not demonstrate that he or anyone else made the managers aware of his previous EEOC complaint and he does not allege evidence based on the employer's behavior, actions, or comments that the employer knew about the protected activity. *See id.* at 126.[9] For these reasons, the plaintiff has not alleged facts that demonstrate that the relevant employers had actual knowledge of his 2012 EEOC complaint.

### 2. *Existence of Facts That Suggest the Adverse Action Occurred Because of the Protected Activity*

Even if the plaintiff alleged facts demonstrating that some managers had actual knowledge of his 2012 EEOC complaint, then he would still need to allege facts showing that the adverse activity occurred either because of or in temporal proximity to the protected activity. *See id.* at 122. Regarding the first route to prove causation, a plaintiff may demonstrate facts that "suggest[]

---

[8] The "earlier experience" that the plaintiff references was the basis for his 2012 complaint—that is, that his supervisors failed to timely notify him that his mother was hospitalized. (*See* ECF No. 3, 7 ¶¶ 3–4.) That incident is substantially similar to the plaintiff's issue in 2016 when his supervisors delayed signing his leave forms to go see his dying grandmother. (*See id.* ¶ 4.)

[9] The Fourth Circuit in *Roberts* gave examples of ways that the plaintiff could have demonstrated that his employer had actual knowledge of his previous complaint. *Id.* at 125–26. He could have showed evidence that he had told the employer about the previous complaint himself, or that those who received the complaint reported it to the employer in question. *Id.* Additionally, the plaintiff could have alleged evidence based on the employer's behavior, actions, or comments that indicated the employer knew about the protected activity. *Id.* at 126. The plaintiff has alleged no such facts here.

that the adverse action occurred because of the protected activity." [10] *See Roberts*, 998 F.3d at 122 (alteration in original) (quoting *Johnson*, 839 F. App'x. at 784).   Particularly when a large gap exists between the time of the protected activity and the adverse action, a court can "look to the intervening period for other evidence of retaliatory animus." *Lettieri*, 478 F.3d at 650.[11]

For the plaintiff's claim regarding cross-training, even if the plaintiff did allege which manager denied his cross-training request and showed that the manager had actual knowledge of the plaintiff's 2012 complaint, the plaintiff does not show facts suggesting that he did not receive training because he filed an EEOC complaint.   The plaintiff states that, during his ten years as a work leader, "[he] received no training."   (ECF No. 3, at 7 ¶ 6.)   Looking at the timeline, the plaintiff filed his EEOC complaint in 2012, and his employer denied his request for cross-training in 2016.   (*Id.* at 7, 9 ¶¶ 6, 17.)   Because the plaintiff worked as a work leader for ten years, the timeframe indicates that the plaintiff worked for six years before filing the 2012 complaint.   (*See id.* at 7 ¶ 6.)   If the plaintiff did not receive any training during his entire ten years as a work leader, then he must also not have received training during his first six years as a work leader before he

---

[10] A plaintiff can demonstrate causality between their protected activity and the employer's adverse action through several ways.   In one case, the Fourth Circuit found that the plaintiff had met the causation element of retaliation when she alleged that her treatment at work changed dramatically after she complained about discrimination.   *See Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 544 (4th Cir. 2003) (finding that a "reasonable inference" of causality could be made after the employee went from getting excellent reviews before she engaged in protected activity to being constantly corrected post-protected activity).   Similarly, the Fourth Circuit found that a plaintiff in another case showed facts that suggested that the employer's actions occurred because of the plaintiff's protected activity when she showed that her employer demoted her job responsibilities after she filed a complaint.   *See Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).

[11] In *Lettieri*, even though thirteen months had elapsed between the time of the protected activity and the adverse action, the plaintiff could establish causation because a jury could have found sufficient evidence of causation between her complaint and eventual firing when her employer "stripped [her] of significant job responsibilities" following her protected activity.   478 F.3d at 650–51.

filed the 2012 EEOC complaint.  (*See id.*)  The fact that the plaintiff neither received training before his 2012 complaint nor after the complaint shows no difference in treatment.  The Court thus finds that the plaintiff's manager did not deny his request to cross-train because of his protected activity.

Regarding Flagler's placement of the 2013 e-mail in the plaintiff's personnel file, the plaintiff fails to identify to what the "incident in 2012" refers.  *See supra* note 7 (explaining that the "incident" cannot refer to the plaintiff's 2012 EEOC complaint because, at the time Flagler placed the email in the plaintiff's folder, she did not know about the 2012 EEOC complaint).  Flagler thus did not take this action because of the plaintiff's alleged protected activity.

Regarding the April 2016 Red Cross message, the plaintiff does not allege any facts that indicate that his managers delayed his leave because of his prior EEOC activity.  The plaintiff does state that "[he is] aware of non-EEO active employees who got their leave requests approved the day their Red Cross messages arrived, or the next day."  (*See* ECF No. 3, at 10 ¶ 24.)  The plaintiff does not, however, address whether the defendant's common practice is to approve leave requests on the same or next day instead of within the week.  The plaintiff also gives reasons for his managers' delays in granting his leave request.  (*See id.* at 9 ¶¶ 20, 22.)  Stewart, for example, had to leave "to get his car inspected and [said] he had no time to take care of [the plaintiff's] 'issue' at th[at] time."  (*Id.* ¶ 20.)  The plaintiff also accounts for Pettitt, saying that he did not see Pettitt the day after Pettitt received the Red Cross message because "Pettitt . . . went to Spangdahlem Air base" that day.  (*Id.*)

In total, the managers who received the Red Cross message on April 25, 2016, took four days to approve the plaintiff's leave.  (*Id.* ¶ 22.)  While Stewart and Pettitt perhaps could have handled the request more quickly, the plaintiff's facts still do not "suggest[] that the adverse action

16

occurred because of the protected activity." *Roberts*, 998 F.3d at 123 (alteration in original) (quoting *Johnson*, 839 F. App'x. at 784). The plaintiff has thus failed to allege facts showing that his employers engaged in retaliation because of his prior filing of an EEOC complaint. *See id.* at 122–125.

### 3. *Temporal Proximity to the Protected Activity*

A plaintiff can establish a causal connection between their protected activity and the employer's adverse action by alleging that the adverse act "bears sufficient temporal proximity to the protected activity." *Roberts*, 998 F.3d at 123 (alteration in original) (quoting *Johnson*, 839 F. App'x. at 784).[12] An adverse action that occurs "*shortly* after the employer became aware of the protected activity" can satisfy the plaintiff's burden for causation. *Id.* at 126 (emphasis in original) (quoting *Dowe*, 145 F.3d at 657). Conversely, a greater period of time between the employer becoming aware of the protected activity and the adverse action "negates any inference that a causal connection exists between the two." *Id.* (quoting *Dowe*, 145 F.3d at 657). Although no bright-line rule defines what span of time constitutes temporal proximity, the Fourth Circuit has held that three to four month spans of time between an employer's awareness of the protected activity and the protected activity itself "is too long to establish a causal connection by temporal proximity alone." *Id.* at 127 (quoting *Pascual v. Lowe's Home Ctrs., Inc.*, 193 Fed. App'x 229, 233 (4th Cir. 2006)); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (stating

---

[12] Temporal proximity, however, still requires that the employer committing the adverse action had actual knowledge of the plaintiff's protected activity. *See Allen*, 273 F. Supp. 2d at 708. *See supra* Part III.C.1 (concluding that the plaintiff failed to plausibly allege that the decisionmakers had actual knowledge of his protected activity).

that, when a plaintiff claims retaliation by only using temporal proximity to prove causation, the temporal proximity must be "very close").[13]

The measurement of time to determine temporal proximity starts not when the protected activity occurs, but rather when the "decisionmaker" at question learned of the protected activity. *See Roberts*, 998 F.3d at 126. Because the plaintiff here has not demonstrated that his managers had actual knowledge of his 2012 EEOC complaint, the Court assumes that, if the plaintiff's managers had actual knowledge of the plaintiff's 2012 EEOC complaint, the managers learned of the complaint when the plaintiff filed it in 2012 or shortly thereafter. Here, the plaintiff states three instances of alleged retaliation: (1) denial of cross-training, (2) the 2013 e-mail, and (3) the Red Cross message regarding the plaintiff's grandmother.

Starting with his first claim, the plaintiff asserts that he was denied cross-training in February 2016 (though he does not state who denied his cross-training). The denial was a "pattern which [he] had observed and experienced since filing [his] earlier complaints." (ECF No. 3, at 7 ¶ 6.) Although the plaintiff noticed a pattern of denials before, he does not state approximately when these denials started. Even if the managers who denied his cross-training requests did have actual knowledge of the plaintiff's 2012 EEOC complaint, the plaintiff has not plausibly alleged that their discovery of his protected activities and denials of his cross-training requests occurred within a "very close" timeframe. *See Breeden*, 532 U.S. at 273; *see also Roberts*, 998 F.3d at 127.

---

[13] The Supreme Court found that, in that case, a twenty-month span of time between the adverse action and the employer's presumed knowledge of the protected activity was too long to establish causality by temporal proximity when the plaintiff relied only on temporal proximity to show causation. *See Breeden*, 532 U.S. at 273–74.

Similarly, regarding the 2013 e-mail, the plaintiff has not alleged any facts that would allow the Court to determine how much time elapsed between the filing of the 2012 complaint and February 2013.

Lastly, concerning the 2016 Red Cross message about the plaintiff's grandmother, the temporal period between his 2012 EEOC complaint and the incident is approximately four years. *See Roberts*, 998 F.3d at 127. Temporal proximity alone cannot prove causation with a multiple-year delay between the decisionmakers' discovery of the activity and the adverse action.

Too many variables are at play to hold that there is sufficient temporal proximity between when the "decisionmaker" found out about the plaintiff's 2012 EEOC action and when any of the adverse actions occurred. *See id.* Coupled with the fact that the plaintiff has not demonstrated that his managers had actual knowledge of his 2012 complaint, the plaintiff cannot establish causation by temporal proximity.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant the defendant's motion to dismiss. Despite the plaintiff's pro se status, the Court will not allow him an opportunity to amend the claims in his complaint. For all the reasons explained above, any such amendment would be futile. "Allowing [the plaintiff] to file an [a]mended [c]omplaint where he so clearly cannot state a claim would be wasteful and unduly burdensome on the [d]efendant[]." *Shurland v. Edwards*, No. 3:19cv92, 2019 WL 3646768, at *8 (E.D. Va. Aug. 6, 2019).

Should the plaintiff wish to appeal this Opinion, written notice of appeal must be filed with the Clerk of Court within thirty (30) days of the date of entry hereof. Failure to file a notice of appeal within that period may result in the loss of the right to appeal.

The Court will issue an appropriate Order.

Let the Clerk mail a copy of this Opinion to all counsel of record and the *pro se* plaintiff.

Date: 28  July 2022
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge